UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 13 |
| ANTONIO CERRATO aka<br>ANTONIO CERRATO BREVE,<br>                    Debtor. | Case No. 12-47995-CEC |

_____

| | |
|---|---|
| ANTONIO CERRATO,<br>               Plaintiff, | |
|       -against- | Adv. Proc. No. 13-01138-CEC |
| BAC HOME LOANS SERVICING, f/k/a<br>COUNTRYWIDE HOME LOANS SERVICING, L.P. | |
| and | |
| BANK OF AMERICA, N.A.,<br>                Defendants. | |

_____

<u>DECISION</u>

APPEARANCES:

| | |
|---|---|
| Brian McCaffrey, Esq. | Lisa Milas, Esq. |
| Brian McCaffrey, P.C. | Frenkel Lambert Weiss Weisman & Gordon LLP |
| 88-18 Sutphin Boulevard , 1st Floor | 53 Gibson Street |
| Jamaica, New York 11435 | Bay Shore New York 111706 |
| *Attorney for Plaintiff* | *Attorney for Defendants* |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This adversary proceeding was commenced by Antonio Cerrato ("Cerrato", or "Plaintiff"), the debtor in the above captioned chapter 13 proceeding, to avoid a pre-petition foreclosure sale and to quiet title to real property.  The defendants, BAC Home Loan Servicing and Bank of America N.A. (together, "BAC" or "Defendants"), filed a motion to dismiss the adversary proceeding, contending that Cerrato's rights in the real property were extinguished as of the conclusion of the foreclosure sale and that the foreclosure sale cannot be avoided. Because Cerrato has not pleaded any fact that could be a basis for avoiding the foreclosure sale, the motion to dismiss is granted.

Jurisdiction

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A)(B), (E), (H), (K) and (O),  28 U.S.C. § 1334, and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

Background

The following facts are not in dispute.

On November 20, 2012, Cerrato filed a voluntary petition under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").  The case was converted from chapter 7 to chapter 13, pursuant to § 706(a) of the Bankruptcy Code, on March 22, 2013.  On April 30, 2013 Cerrato filed this adversary proceeding against BAC.

Prior to the filing of the bankruptcy petition, on September 20, 2002, Cerrato executed a note in the amount of $232,435 (the "Note") in favor of BAC.   (BAC's Mot. to Dismiss Ex. A, Adv. Pro. No 13-01138-CEC, ECF No. 10). The Note was secured by a mortgage (the

"Mortgage"), executed the same day, which granted a lien on property located at 80-68 89th Avenue in Woodhaven, New York (the "Property").  Id. Ex. B. The Mortgage was recorded in the Office of the City Register of the City of New York on July 29, 2003.  Id.

Cerrato defaulted on the Note, and on March 29, 2009, BAC commenced a foreclosure action against Cerrato in the Supreme Court of the State of New York, Queens County (the "Foreclosure Action").  (Compl. at ¶ 11, Adv. Pro. No 13-01138-CEC, ECF No. 1).  BAC obtained a Judgment of Foreclosure and Sale from the New York State Supreme Court on November 27, 2009 (the "Foreclosure Judgment").  Id. at ¶ 12.  The Foreclosure Judgment was recorded with the Queen's County Clerk on December 11, 2009.  (BAC's Mot. to Dismiss Ex. G, Adv. Pro. No 13-01138-CEC, ECF No. 10).

The Foreclosure Sale was conducted on April 9, 2010 and resulted in BAC purchasing the Property.  (Compl. at ¶ 12, Adv. Pro. No 13-01138-CEC, ECF No. 1; BAC's Mot. to Dismiss Ex. J, Adv. Pro. No 13-01138-CEC, ECF No. 10).  On November 3, 2010, the Referee's Report of Sale was filed with the Queens's County Clerk.  (BAC's Mot. to Dismiss Ex. J, Adv. Pro. No 13-01138-CEC, ECF No. 10).  Following the Foreclosure Sale, the referee issued a deed to BAC (the "Referee's Deed"), although the New York State Real Estate Transfer Tax was never paid.  Id. at ¶ 12-13.  As of the Cerrato's petition date, the Referee's Deed was still not recorded and Cerrato was still the owner of record.  Id. at ¶ 14, 18.

<u>Arguments</u>

The Plaintiff's complaint alleges that the Defendants wrongfully obtained the Referee's Deed in contravention of the Foreclosure Judgment, New York State Real Property Actions and Proceedings Law §1354, and New York State Tax Law § 1410, and that the deed was delivered prematurely and without authority.  The Plaintiff also asserts that he is entitled to step into the

shoes of the chapter 13 trustee and to avoid the transfer of the Property pursuant to Bankruptcy Code §§ 544, 547, 548, and 549.

The Defendants assert that the Cerrato's legal and equitable interests in the Property terminated upon conclusion of the foreclosure sale, and the fact that the Referee's Deed has not been recorded does not revive the Cerrato's interest in the Property. The Defendants maintain that the failure to pay transfer taxes under applicable New York State law does not provide a basis to avoid the Foreclosure Judgment, the Foreclosure Sale, or the Referee's Deed. The Defendants also contend that, as a matter of law, Plaintiff is not entitled to relief pursuant to §§ 544, 547, or 548 of the Bankruptcy Code, and that Cerrato lacks standing to pursue an avoidance action.

<u>Legal Standard</u>

Rule 12(b)(6) provides that a complaint may be dismissed "for failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6); <u>see</u> Fed. R. Bankr. P. 7012(b). The purpose of Rule 12(b)(6) "'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'" <u>Halebian v. Berv</u>, 644 F.3d 122, 130 (2d Cir. 2011) (quoting <u>Global Network Commc'ns, Inc. v. City of New York</u>, 458 F.3d 150, 155 (2d Cir. 2006)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). In making this determination, a court must liberally construe the complaint, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. <u>See</u> <u>Goldstein v. Pataki</u>, 516 F.3d 50, 56 (2d Cir. 2008). However, courts "are not bound to accept as true a legal conclusion couched as a factual

allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); see Iqbal, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). "Determining whether a complaint states a plausible claim for

relief" is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." Iqbal, 556 U.S at 679. In other words, plausibility "'depends

on a host of considerations: the full factual picture presented by the complaint, the particular

cause of action and its elements, and the existence of alternative explanations so obvious that

they render plaintiff's inferences unreasonable.'" Fink v. Time Warner Cable, 714 F.3d 739, 741

(2d Cir. 2013) (quoting L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011)).

Discussion

A. The Plaintiff's Rights in the Property After the Foreclosure Sale

The Plaintiff asserts that because the Referee's Deed was never recorded, he is still the

owner of record, and that Property is therefore property of the estate within the meaning of § 541

of the Bankruptcy Code. BAC argues that the pre-petition completion of the foreclosure sale

extinguished the Plaintiff's rights in the Property, whether or not the deed was subsequently

delivered or recorded, and that because the Plaintiff has no rights in the Property, it is not

property of the estate.

The bankruptcy estate is comprised of, among other things, "all legal or equitable

interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

However, the Bankruptcy Code does not define these interests; a debtor's property interests are

created and defined by state law. Butner v. United States, 440 U.S. 48 (1979). "Unless some

federal interest requires a different result, there is no reason why such interests should be

analyzed differently simply because an interested party is involved in a bankruptcy

proceeding." Id. at 55.  A debtor's right to reinstate a mortgage in a Chapter 13 case is dependent on his interest in the property, as defined by state law.  In re Ghosh, 38 B.R. 600, 603 (Bankr. E.D.N.Y. 1984) (citing Matter of Valente, 34 B.R. 804 (Bankr. D. Conn. 1982)).

It is well established that under New York law, a debtor's right of redemption of, and interest in, real property is extinguished by a foreclosure sale, whether or not the deed has been delivered.  Norwest Mtge., Inc. v. Brown, 35 A.D.3d 682, 683 (N.Y. App. Div. 2006); GMAC Mortg. Corp. v. Tuck, 299 A.D.2d 315 (N.Y. App. Div. 2002); United Capital Corp. v. 183 Lorraine St. Assocs., 251 A.D.2d 400 (N.Y. App. Div. 1998).  The Second Circuit Court of Appeals and bankruptcy courts within the state of New York agree.  Rodgers v. County of Monroe (In re Rodgers), 333 F.3d 64, 67-68 (2d Cir. 2003); In re Mizuno, 288 B.R. 45, 49 (Bankr. E.D.N.Y. 2002) (rejecting debtor's contention "that he continued to have an equitable right to redeem the property up until the point of the actual conveyance of the deed from the Referee" to the purchaser); In re Cretella, 42 B.R. 526, 532 (Bankr. E.D.N.Y. 1984) ("It is thus abundantly clear that the mortgagor has no legal or equitable interest in real property after a foreclosure sale, even if the formal transfer of the title has not taken place, unless of course he has the right to redeem."); Ghosh, 38 B.R. at 602 ("Under New York law a debtor loses all equitable and legal interest in property validly sold at foreclosure whether or not the deed to that property has been delivered to the purchaser."); In re Butchman, 4 B.R. 379, 380 (Bankr. S.D.N.Y. 1980) ("The foreclosure sale effectively cut off the debtors' legal title or equity of redemption in the mortgaged premises.").  Consequences of this well-established principle of New York law in bankruptcy is clear.  As the Second Circuit held in Rodgers, "once the ability to redeem has been lost pre-petition, the foreclosed property sold at a public sale is no longer property of the estate for purposes of Section 541." Rodgers, 333 F.3d at 68.

Cerrato contends that a failure to record a deed subjects the deed to attack by a trustee, pursuant to § 544(a) of the Bankruptcy Code. Cerrato cites to two cases from the Eastern District of Pennsylvania Bankruptcy Court in support of his argument: In re Allenwear & Associates, 89 B.R. 531 (Bankr. E.D. Pa. 1988) and In re Duffy-Irvine Associates, 39 B.R. 525 (Bankr. E.D. Pa. 1984). Neither of these cases involved a foreclosure sale, but instead, discussed the trustee's ability to avoid an unrecorded mortgage using the Bankruptcy Code's "strong arm" powers. In this case, Cerrato has not claimed that BAC's lien on the Property was unrecorded or improperly recorded, nor would it matter since BAC's lien had already been reduced to judgment before the filing of Cerrato's bankruptcy.

## B.    The Unpaid Transfer Tax

New York imposes a transfer tax on the sale of real estate. See NY Tax §§ 1400-1421. The transfer tax applies to a sale pursuant to a judgment of foreclosure. See NY Tax § 1405 (listing exemptions to the real estate transfer tax, which do not include foreclosure sales). The obligation to pay the real estate transfer tax falls on the grantor. See NY Tax § 1404. Where the grantor fails to pay the tax, the duty to pay shifts to the grantee, and the parties are held joint and severally liable for the tax. Id. Section 1410(a) also requires that the state real estate transfer tax be paid within 15 days from the day of delivery, from the grantor to the grantee, of the instrument effecting the conveyance. NY Tax § 1410. Under § 1410(b), an instrument effecting a conveyance cannot be recorded unless the real estate transfer tax, under §1410(a), has been paid. Id.

Assuming that Plaintiff is correct that the transfer tax was not paid, this fact would not resurrect his right of redemption. The payment of the transfer tax is no different from any other ministerial act that is necessary to close the foreclosure sale, such as transfer of a deed. As

explained above, fulfillment of ministerial acts incidental to a foreclosure sale are not necessary to extinguish a debtor's right of redemption. See Rodgers, 333 F.3d at 69 (holding that the delivery of the deed following a foreclosure sale was a ministerial act that was not prohibited by the automatic stay).

Furthermore, Cerrato lacks standing to claim any "impropriety in the events surrounding the closing of title which resulted in the sale of the premises" because he did not have any interest in the Property once the sale was completed.  In Kolkunova v. Guaranteed Home Mortgage Co., 43 A.D.3d 878 (N.Y. App. Div. 2007), the Appellate Division, Second Department reaffirmed this well established principle, holding that a mortgagor lacks standing after a foreclosure sale to set aside the foreclosure sale and to reinstate her right to redeem property based upon arguments that events surrounding the closing of the sale were improper.  Accord, Ocwen Fed. Bank, FSB v. Bassi, 294 A.D.2d 478 (N.Y. App. Div. 2002) (holding that appellant-mortgagors lacked standing to object to the referee's variance from the "time is of the essence" term of sale); Scheckter v. Emigrant Sav. Bank, 237 A.D.2d 273, 274 (N.Y. App. Div. 1997) (holding that plaintiff-mortgagor lacked standing to enforce the terms of a foreclosure sale, since there was no statutory authority allowing a mortgagor to enforce the provisions of a sale agreement when a foreclosure purchaser is in default); Katzeff v. Cohn, 139 Misc. 2d 1076 (N.Y. Sup. Ct. 1988) (finding that mortgagor had no legal capacity to bring an action against defaulting foreclosure sale-bidder since mortgagor was not a party to the foreclosure sale agreement nor was mortgagor an intended third-party beneficiary).

C. <u>Avoidance of the Foreclosure Sale under 11 U.S.C. § 544(a), as a Hypothetical Judgment Lien Creditor or as a Bona Fide Purchaser</u>[1]

    1. <u>Hypothetical Judgment Lien Creditor; Section 544(a)(1) of the Bankruptcy Code</u>

Cerrato asserts that because the Referee's Deed was not recorded at the time of his bankruptcy filing, a hypothetical judgment lien creditor would have priority over any holder of that deed, whether or not the deed is subsequently recorded. BAC argues that the recording of the Foreclosure Judgment is the relevant act to determine the priority of the purchaser at a foreclosure sale against a hypothetical lien creditor.

Section 544(a)(1) of the Bankruptcy Code gives the trustee in bankruptcy the status of a hypothetical judgment lien creditor. [2] "The trustee hypothetically extends credit to the debtor at the time of filing and, at that moment, obtains a judicial lien on all property in which the debtor has any interest that could be reached by a creditor." <u>Musso v. Ostashko</u>, 468 F.3d 99, 104 (2d Cir. 2006). Once the trustee obtains this status, he is entitled to the benefits derived from relevant state laws governing the priority of liens. <u>See</u> <u>In re Kors, Inc.</u>, 819 F.2d 19, 22-23 (2d Cir.1987) ("Once the trustee has assumed the status of a hypothetical lien creditor under § 544(a)(1), state law is used to determine what the lien creditor's priorities and rights are."); <u>In re Vienna Park Prop.</u>, 976 F.2d 106, 115 (2d Cir. 1992) (examining Virginia law to determine the rights of a hypothetical lien creditor under § 544(a) when the transaction occurred in Virginia).

---

[1] The Defendants have argued that Plaintiff, as a chapter 13 debtor, lacks standing to pursue avoidance actions under the Bankruptcy Code. For the purposes of this decision, it is not necessary to address the issue of whether a chapter 13 debtor may step into the shoes of a trustee to pursue avoidance claims pursuant to section 544, 547, or 548 of the Bankruptcy Code, as the claims are dismissed on the merits.

[2] Section 544(a) of the Bankruptcy Code provides: "The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists." 11 U.S.C. § 544(a)(1).

Under New York Law, § 5203 of the New York Civil Practice Law and Rules (the "C.P.L.R.") governs the priority of liens on real property. N.Y. C.P.L.R. 5203. Subsection (a) of article 52 of the C.P.L.R. states, in pertinent part:

> No transfer of an interest of the judgment debtor in real property, against which property a money judgment may be enforced, is effective against the judgment creditor . . . from the time of the docketing of the judgment with the clerk of the county in which the property is located . . . .

N.Y C.P.L.R. 5203(a). Thus, a properly filed foreclosure judgment "takes precedence over *any* subsequent transfer with respect to the debtors' property, with no exception for a subsequent judicial lien of a hypothetical creditor under 11 U.S.C. § 544(a)(1) and (2)". Mosello v. Ali, Inc. (In re Mosello), 190 B.R. 165, 169 (Bankr. S.D.N.Y. 1995).

BAC obtained the Foreclosure Judgment on November 27, 2009, and the judgment was docketed with the Queens County Clerk on December 11, 2009. Cerrato filed his bankruptcy on November 20, 2012, almost three years after the Foreclosure Judgment was recorded. Therefore, based on New York's priorities of liens, a hypothetical judicial lien holder would not have priority over BAC's recorded Foreclosure Judgment. See N.Y. C.P.L.R. 5203(a). Nor would a hypothetical judicial lien holder have priority over a purchaser for value at a judicial sale, as such a transfer has priority over a docketed judgment under New York law. N.Y. C.P.L.R. 5203(a)(3). Here, BAC is not only the holder of a recorded judgment of foreclosure, but is also a purchaser for value at the Foreclosure Sale, having bid an amount deemed equivalent to the Mortgage balance plus sale expenses. Polish Nat'l Alliance v. White Eagle Hall Co., 98 A.D.2d 400, 407 (N.Y. App. Div. 1983); see discussion infra Part E.

2.  Bona Fide Purchaser; Section 544(a)(3) of the Bankruptcy Code

Cerrato contends that because the Referee's Deed was not recorded at the time his

petition was filed, that there was no constructive or actual notice of the transfer to prevent a bona

fide purchaser of the Property, who obtained that status as of the commencement of the case,

from obtaining an interest senior to BAC's.  BAC claims that the filing of a notice of pendency

and the Foreclosure Judgment provided sufficient notice to prevent any subsequent purchaser

from obtaining the status of a bona fide purchaser.

Section 544(a)(3) of the Bankruptcy Code confers upon a trustee all the rights and powers

of a bona fide purchaser and "empowers a trustee to exercise 'the rights and powers' of a

hypothetical BFP".[3]  In re Asher, 488 B.R. 58, 66 (Bankr. E.D.N.Y. 2013).  The trustee obtains

the status of a bona fide purchaser at the time of the commencement of the case.  11 U.S.C. §

544(a)(3).  The requirements for bona fide purchaser status are governed by state law. McKenzie

v. Irving Trust Co., 323 U.S. 365, 371(1945); Chase Manhattan Bank v. Taxel (In re Deuel), 594

F.3d 1073, 1078 (9th Cir. 2010); Arnold v. Bank of New York Trust Co. (In re Badagliacca), 403

B.R. 288, 292 (Bankr. W.D.N.Y. 2009); In re Bygraph, 56 B.R. 596, 602 (Bankr. S.D.N.Y.

1986).  In New York, to qualify as a bona fide purchaser, a purchase must be made in good faith,

without notice of any adverse interests in the property, and for valuable

consideration.  O'Connell v. JPMorgan Chase Bank Nat. Ass'n, 2012 WL 6151972 (E.D.N.Y.

2012); see N.Y. REAL PROP. 291.  The language in N.Y. Real Prop. 291 has been interpreted to

require that a purchaser prove an absence of actual or constructive notice as an implied

---

[3] Section 544(a)(3) of the Bankruptcy Code provides: "The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditors, the rights and powers of, or may avoid any ransfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists."  11 U.S.C. § 544(a)(3).

component of good faith.  Asher, 488 B.R. at 72.  E.g., 2 WARREN'S WEED N.Y. REAL PROP.

15.03; Baccari v. De Santi, 70 A.D.2d 198, 201, 431 N.Y.S.2d 829 (N.Y. App. Div. 1979)).

Under New York law, constructive notice can be implied if the purchaser would have uncovered

an adverse interest through "(1) an examination of the county record as to the subject property,

(2) reasonable inquiry of those in actual possession, or (3) reasonable inquiry on the basis of all

known circumstances."  Asher, 488 B.R. at 72-73.  Constructive notice leads to the imputation of

knowledge of all facts apparent in the county record or those likely to have been discovered

during a diligent inquiry, to any purchaser.  Id. at 73.  Furthermore, in New York, a good faith

purchaser is deemed to have constructive notice of any deed or instrument properly

recorded.  Fairmont Funding, Ltd. v. Stefansky, 301 A.D.2d 562, 563-64 (N.Y. App. Div. 2003).

Any purchaser of the Property, as of the commencement of this case, would be charged

with notice of the public record, which includes any properly recorded instruments.  As of the

commencement of the Cerrato's bankruptcy, the public record included the Foreclosure

Judgment, the notice of pendency, and the Referee's Report of Sale.  See Mosello, 190 B.R. at

170 ("[A] bona fide purchaser under New York law would have been required to examine the

entire public record and would have discovered the foreclosure judgment . . ..").  These recorded

instruments would charge any subsequent purchaser with the information contained in

them.  Fairmont Funding, 301 A.D.2d at 564 ("The intended purchaser must be presumed to

have investigated the title, and to have examined every deed or instrument properly recorded,

and to have known every fact disclosed or to which an inquiry suggested by the record would

have led.").  The Foreclosure Judgment provides a purchaser with notice that a foreclosure sale

was authorized by the court, and at a minimum would require a purchaser to inquire whether a

foreclosure sale had occurred.  See In re Davidson Rehab Associates, 103 B.R. 440, 444 (Bankr.

S.D.N.Y. 1989) (holding that a would-be bona fide purchaser could not simply ignore the recorded notices of an impending non-judicial foreclosure sale and fail to make inquiry as to whether the announced sale had occurred).    Furthermore, here the Referee's Report of Sale provided express notice that a foreclosure sale had been conducted and that BAC was the winning bidder.  (BAC's Mot. to Dismiss Ex. J, Adv. Pro. No 13-01138-CEC, ECF No. 10). Because a bona fide purchaser would have notice of the Foreclosure Judgment, the notice of pendency, and the Referee's Report of Sale at the time Cerrato's bankruptcy petition was filed, Cerrato is unable to avoid the Foreclosure Judgment and subsequent sale through § 544(a)(3) of the Bankruptcy Code.

    D.  <u>Avoidance of the Lien under 11 U.S.C. § 547 as a Preference</u>

      Under § 547 of the Bankruptcy Code, the bankruptcy trustee may avoid any transfer of a debtor's property interest that is: (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made . . . on or within 90 days before the date of the filing of the petition. 11 U.S.C. § 547(b).  Section 547 of the Bankruptcy Code provides the trustee the ability to avoid transfers that occur within a 90-day window before the filing of the petition.  The initiation of the Foreclosure Action, the filing of the notice of pendency, the filing of the Foreclosure Judgment, the Foreclosure Sale, and the transfer of the Referee's Deed all occurred outside of the 90 day window.  Moreover, even if Cerrato could prove that BAC received a preferential transfer, BAC, as a secured creditor, would have a valid defense under § 547(b).  <u>See</u> <u>In re Ehring</u>, 900 F.2d 184 (9th Cir. 1990) (purchase of property by foreclosing creditor at non-collusive, non-judicial foreclosure sale for balance of debt is not avoidable as preference since creditor did not receive more than it would have received in liquidation).

E. <u>Avoidance of the Lien under 11 U.S.C. § 548 as a Fraudulent Conveyance</u>

Cerrato argues that BAC's purchase of the Property at the Foreclosure Sale is a fraudulent conveyance under § 548(a)(1) of the Bankruptcy Code. Cerrato contends that because the purchase price, which Cerrato claims was $1,000, did not constitute "reasonably equivalent value" for the property, that the Foreclosure sale is a fraudulent conveyance.[4]

Section 548(a)(1)(B) authorizes a trustee to avoid a transfer of an interest in property of the debtor under a theory of constructive fraud.  That section provides:

> The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.
> 11 U.S.C. 548(a)(1)(A).

In the first instance, Cerrato's claim under § 548 of the Bankruptcy code must be dismissed because the Foreclosure Sale took place more than two years prior to the commencement of the bankruptcy case, and thus, outside of the statutory look-back period under § 548.  11 U.S.C. § 548 ("The trustee may avoid any transfer . . . that was made or incurred on or within 2 years

---

[4] Cerrato's complaint refers to § 548(a)(2)(A), which relates to charitable contributions.  The transfer in question was not a charitable contribution, and it will be assumed that Cerrato's claim is based on § 548(a)(1)(A).

before the date of the filing of the petition . . . .").  However, Cerrato's § 548 claim is also substantively defective.

Although § 548 of the Bankruptcy Code applies to any "transfer", which includes foreclosure of the debtor's equity of redemption, 11 U.S.C. § 101(54), Cerrato, as a matter of law, did not "receive less than a reasonably equivalent value in exchange for such transfer". While the term "reasonably equivalent value" is not defined in the Bankruptcy Code, the United States Supreme Court has addressed what constitutes "reasonably equivalent value" in the context of a foreclosure sale.

In BFP v. Resolution Trust Corporation, 511 U.S. 531(1994), the Supreme Court found that in the context of a foreclosure sale, the foreclosure sale price constitutes "reasonably equivalent value". Id. at 545.  The rationale behind this determination is the unique nature of a property subject to a forced sale.  Id. at 537-538.  A foreclosure sale does not occur in a normal free market, and does not result in a price fixed by a negotiation.  Id.  Foreclosure sales typically occur without ample time to "shop" for the highest paying purchaser. Id.  In short, "fair market value" presumes market conditions that do not exist in the context of a forced sale.  Id.  BFP, accordingly, holds that "a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." Id. at 545.

In the present case, Cerrato has not pled that BAC failed to comply with the requirements of New York foreclosure law in noticing or conducting the Foreclosure Sale, and thus cannot attack the Foreclosure Sale as a fraudulent conveyance under the holding of BFP.

Cerrato also argues that the Foreclosure Sale resulted in an unconscionably low price that requires the sale to be set aside.  BFP  holds that "mere inadequacy of the foreclosure sale price

is no basis for setting the sale aside, though it may be set aside (*under state foreclosure law*, rather than fraudulent transfer law) if the price is so low as to shock the conscience or raise a presumption of fraud or unfairness." 511 U.S. at 542. Courts in New York have consistently held that foreclosure sales below 10% of fair market value are unconscionable, while sales at or above 50% of fair market value have been consistently upheld. In re 824 South East Blvd. Realty, Inc., 2012 WL 3561981, at *8; see, e.g., Long Island Sav. Bank v. Jean Valiquette, M.D., P. C., 183 A.D.2d 877, 878 (N.Y. App. Div. 1992) (purchase price of 57% of property's market value not unconscionable). Sales as low as 30% of fair market value have been upheld. E.g., Frank Buttermark Plumbing & Heating Corp. v. Sagarese, 119 A.D.2d 540 (N.Y. App. Div. 1986).

When addressing the value paid in the context of a foreclosure sale, the winning bid should be considered cumulatively with any encumbrances to which it would be subjected. See Barr v. Allen (In re Barr), 170 B.R. 772 (Bankr. E.D.N.Y. 1994) (analyzing the consideration paid in a foreclosure sale based on an aggregate, which included the bid, the assumed mortgage, the unpaid taxes, and accrued interest). Here, BAC's winning bid was $1,000. (BAC's Mot. to Dismiss Ex. J, Adv. Pro. No 13-01138-CEC, ECF No. 10). However, the aggregate amount BAC paid was higher than its bid price. New York law allows a plaintiff-mortgagee to move for a deficiency judgment when the amount bid at a public sale is not sufficient to pay the full amount owed under a judgment of foreclosure. N.Y. REAL PROP. ACTS. §1371. The amount of the deficiency judgment is equal to the amount of the foreclosure judgment with interest, plus interest and related costs and disbursements of the action, less the market value of the property, as determined by the court, or the sale price of the property, whichever is greater. Id.

Thus, by purchasing the Property at the Foreclosure Sale, BAC, as the judgment creditor, reduced its deficiency claim by the greater of its bid or the market value of the Property. The record also shows that BAC did not move for a deficiency judgment within the 90 day statutory window from the date that the Referee's Deed was conveyed. (Supplemental Aff. in Supp. of Pl.'s Opp'n to Def.'s Mot. to Dismiss at ¶ 8, Adv. Pro. No 13-01138-CEC, ECF No. 18); N.Y. Real Prop. Acts. §1371. When a judgment creditor does not seek a deficiency judgment, the proceeds of the sale are deemed to be in full satisfaction of the mortgage debt. See N.Y. REAL PROP. ACTS. §1371.

> [W]here the successful bid for a sum less than the amount due is made by a mortgagee who seeks no deficiency judgment, the law deems the bid to be the equivalent of the mortgage balance plus the sale expenses. A mortgagee, which bids in the property for less than the amount due, is not required to indulge the useless act of paying itself the amount of its bid. The rule has a sound rationale, for in the absence of a deficiency judgment proceeding (see RPAPL § 1371), the consequence of the bid is to give full credit to the mortgagor for the amount of the mortgage balance plus the expenses of the sale.

Polish Nat'l Alliance v. White Eagle Hall Co., 98 A.D.2d 400, 407 (N.Y. App. Div. 1983). See also Serial Federal Sav. & Loan Asso. v. Crescimanno, 35 A.D.2d 561 (N.Y. App. Div. 1970) (holding at the judgment-creditor's winning bid of $1,000 at the foreclosure sale was not unconscionable where the creditor waived any deficiency judgment). At the Foreclosure Sale, BAC bid $1,000, but also waived its deficiency claim of $303,790.35 (BAC's Mot. to Dismiss Ex. J, Adv. Pro. No 13-01138-CEC, ECF No. 10), by not seeking a deficiency judgment. Thus BAC's aggregate bid was $304,790.35, or 76% of the $400,000 property value, according to Cerrato's claimed valuation. (Compl. at ¶ 12, Adv. Pro. No 13-01138-CEC, ECF No. 1). Because the aggregate bid is greater than the minimum amount necessary to rebut a

claim of unconscionability, under New York law, it does not provide grounds to set aside the

Foreclosure Sale. <u>See</u> <u>824 South East Blvd. Realty, Inc.</u>, 2012 WL 3561981, at *8.

F. <u>Avoidance of the Lien under 11 U.S.C. § 549 as a Postpetition Transaction</u>

Cerrato asserts that any attempts by BAC to secure its interest, such as by recording the

referee's deed, would be a violation of § 549 of the Bankruptcy Code.  §549 provides:

> (a) Except as provided in subsection (b) or (c) of this section, the
> trustee may avoid a transfer of property of the estate—
> (1) that occurs after the commencement of the case; and
> (2) (A) that is authorized only under section 303(f) or 542(c) of
> this title [11 USCS § 303(f) or 542(c)]; or
> (B) that is not authorized under this title or by the court.

11 U.S.C. § 549.  At the time of Cerrato's filing, the Property was not property of the estate.  As

explained above, the Foreclosure Sale extinguished Cerrato's legal and equitable interests in the

Property.  Because the Property is not property of the estate under § 541 of the Bankruptcy Code,

§ 549 of the Bankruptcy Code does not bar BAC from recording its deed.  Furthermore, this

issue is not ripe for decision, since Cerrato has not alleged that BAC has recorded the Referee's

Deed.

G. <u>BAC's Proof of Claim</u>

After the final hearing on this matter, and after the deadline to submit supplemental

briefing, Cerrato submitted a Supplemental Affirmation, Based on Newly Discovered Evidence

and Events (Supplemental Affirmation, Based on Newly Discovered Evidence and Events, Adv.

Pro. No 13-01138-CEC, ECF No. 21) (the "Affirmation").  In the Affirmation, Cerrato alleges

that BAC "hedged" the outcome of this adversary proceeding by filing a proof of claim based on

the Mortgage.  (Affirmation at ¶ 6, Adv. Pro. No 13-01138-CEC, ECF No. 21).  Cerrato states

that BAC also filed a Notice of Mortgage Payment Change, which notified Cerrato that mortgage

payments in the amount of $2,301.68 were due as of October 2013.  <u>Id.</u> at ¶ 8.  On September 11,

2013 Cerrato contacted BAC and made a payment in the amount of $2,301.68. <u>Id.</u> at ¶ 9. Cerrato contends that the proof of claim and the Notice of Mortgage Payment Change are evidence that BAC collected a payment that was not owed, violating the automatic stay, or in the alternative, that BAC's proof of claim was an admission that the Mortgage was not extinguished and that it can be reinstated. <u>Id.</u> at ¶ 13.

There is no basis for any relief to be granted to Cerrato based upon the Affirmation. With respect to Cerrato's allegation that BAC violated the automatic stay by filing a Notice of Mortgage Payment Change, the Bankruptcy Rules provide that a holder of a claim *shall* file notice of payment changes or notice of any fees, expenses, and charges incurred in connection with the claim after the bankruptcy case was filed. <u>See</u> Fed. R. Bankr. P. 3002.1. In fact, the failure to file these notices would potentially preclude BAC from presenting the omitted information as evidence in a contested matter or adversary proceeding and would subject them to pay reasonable fees and expenses caused by the failure. <u>See</u> id. Furthermore, on November 11, 2013, BAC filed a letter stating that the Notice of Mortgage Payment Change was filed in error and that Cerrato's payment had been returned.

Cerrato asserts that BAC's proof of claim is effectively a judicial admission that the Mortgage has not been extinguished, or that BAC is judicially estopped from contending that Cerrato's rights in the property have been extinguished. Judicial admissions are "statements of fact rather than legal arguments made to a court." <u>Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber</u>, 407 F.3d 34, 45 (2d Cir. 2005). "Facts admitted by a party are judicial admissions that bind that party throughout the litigation." <u>Hoodho v. Holder</u>, 558 F.3d 184, 191 (2d Cir. 2009) (citing <u>Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.</u>, 440 F.3d 571, 578 (2d Cir. 2006)). "A court can appropriately treat

statements in briefs as binding judicial admissions of fact." Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994).

The filing of a proof of claim is equivalent to the filing of a complaint in a civil action, and an objection to a claim is analogous to an answer. See Nortex Trading Corp. v. Newfield, 311 F.2d 163 (2d Cir.1962); 4-502 Collier on Bankruptcy P 502.02. Legal arguments made to a court are not judicial admissions. N.Y. State Nat. Org. for Women v. Terry, 159 F.3d 86, 97 n. 7 (2d Cir.1998); Maurizio v. Goldsmith, 84 F.Supp.2d 455, 464 (S.D.N.Y.2000), aff'd, 230 F.3d 518 (2d Cir.2000). The record shows that BAC's proof of claim, filed on August 6, 2013, does not claim any amount due under the Mortgage or Note, but states that the Foreclosure Judgment was entered on November 27, 2009, that the Referee's Deed was executed on April 9, 2010, and reserves the right to amend the proof of claim to reflect mortgage arrears in the event that the Foreclosure Judgment and Referee's Deed are set aside in this adversary proceeding. Filing such a proof of claim in order to protect BAC's position in the event of an adverse ruling in this adversary proceeding does not constitute a judicial admission that the Mortgage can be reinstated; indeed, the proof of claim contains no such statement and does not seek payment on the Mortgage or Note. Furthermore, Cerrato's rights in the property cannot be resurrected by BAC's proof of claim, as those rights were terminated, pre-petition, under state law, by the completion of the Foreclosure Sale.

Judicial estoppel prevents a party from asserting a factual position in one case that is contrary to a position that party successfully asserted in a prior case. Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. N.Y. 2004) (citing Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999)). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions

according to the exigencies of the moment." <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749–750 (2001) (citations and quotation marks omitted).  To invoke judicial estoppel, it be shown that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." <u>Mitchell</u>, 190 F.3d at 6 (citations omitted).  Cerrato has failed to identify an inconsistent position taken by BAC in any prior proceeding or any judicial reliance that resulted in a favorable judgment.  Nor has Cerrato pointed to a determination or judgment that resulted from the Court's reliance on BAC's proof of claim.  In short, the doctrine of judicial estoppel has no applicability here.

<u>Conclusion</u>

For the foregoing reasons, BAC's motion is granted.  A separate order will issue.



**Dated: Brooklyn, New York**
**January 24, 2014**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**